FILED
DEC 16 2011
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 10-19194-B-12 |
| Richard Forrest, | DC No. HAR-3 |
|     Debtor. | |

**MEMORANDUM DECISION REGARDING
MOTION TO CONFIRM CHAPTER 12 PLAN**

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed.R.App.P.32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Hilton A. Ryder, Esq., of McCormick, Barstow, Sheppard, Wayte & Carruth, LLP, appeared on behalf of the debtor, Richard Forrest.

René Lastreto, Esq., of Lang, Richert & Patch, appeared on behalf of Sun Valley Raisins, Inc.

Robert Craig Iseley, Esq., appeared on behalf of Spartan Mortgage Services, Inc.

David R. Jenkins, Esq., appeared on behalf of Sterling Pacific Lending, Inc., The Foundation Fund, LLC, and Generation Leasing.

M. Nelson Enmark, Esq., appeared in his capacity as the chapter 12 trustee.

    Before the court is a motion to confirm a chapter 12 plan (the "Motion") filed by the debtor, Richard Forrest (the "Debtor").

    Sun Valley Raisins, Inc. ("Sun Valley"), a raisin packing company, provided crop financing for the Debtor's farming operation. The parties executed various security documents (the "Loan Documents") in connection with the loan.

At the commencement of this case, Sun Valley was owed $210,000. The Debtor's chapter 12 plan (the "Plan") proposes to surrender his 2010 raisin crop to Sun Valley in satisfaction of its secured claim and treat the remainder of the claim as unsecured. The Plan will be funded with, *inter alia*, proceeds of the 2011 crop. Sun Valley objects to its treatment in the Plan and contends that the Loan Documents created, not a security interest in the 2010 crop and future crops and their proceeds, but an absolute assignment of those crops. Based on Sun Valley's interpretation of the Loan Documents, the Debtor has no right to the 2011 crop or its proceeds and the Plan cannot be confirmed. For the reasons set forth below, the Motion will be granted and the Plan will be confirmed.

This memorandum contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 1225[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. 157(b)(2)(A) & (L).

**Background and Findings of Fact.**

This bankruptcy was filed under chapter 12 on August 12, 2010. Richard Forrest is a family farmer who produces raisin grapes on property which he owns. Beginning in 2009, Sun Valley Raisins, a raisin packer, has provided crop financing to the Debtor and has had an exclusive right to pack the Debtor's raisins. Sun Valley filed a secured claim in the amount of $ 210,000 in the Debtor's bankruptcy case and now objects to confirmation of the Debtor's Plan

---

[1] Unless otherwise indicated, all bankruptcy, chapter, code section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated after October 17, 2005, Pub.L.109-8, Apr. 20, 2005, 119 Stat.23.

2

because it does not provide for payment in full of its claim (the "Objection").

In September 2008, the Debtor executed the four documents which constitute the Loan Documents: the Discretionary Draw Promissory Note (Objection, Exhibit 1); the Security Agreement (Exhibit 2); the Agreement Regarding Assignment of Crops and Crop Proceeds (Objection, Exhibit 3; the "Assignment Agreement"); and the Deed of Trust with Assignment of Rents as Additional Security (Objection, Exhibit 4; the "Deed of Trust"), each of which bear the same date.

The Deed of Trust was recorded in May 2009. Exhibit "B," to the Deed of Trust, paragraph 2, and incorporated as part of the Deed of Trust, states: "This Deed of Trust and Assignment of Rents is also for *the purpose of securing payment of all fees, loans . . . and payment of all amounts advanced* . . . pursuant to the Exclusive Delivery Contract and Promise to Make Raisins and/or Promissory Note and/or Security Agreement and/or Agreement Regarding Assignment of Crops and Crop Proceeds." (Objection, Exhibit 4, p. 4, emphasis added.) On May 26, 2009, Sun Valley filed a U.C.C. Financing Statement which recites the Debtor's agreement to deliver all present and future crops and crop proceeds to Sun Valley, "*until all debts and obligations owed by Debtor to [Sun Valley] are paid in full . . . .*" (Objection, Exhibit 5, p. 1, emphasis added.)

Resolution of Sun Valley's Objection turns on the character of the transaction between the parties. The Debtor contends that the Loan Documents created a security interest in the 2010 and future crops and their proceeds, and that Sun Valley's interest in the future crops terminated upon commencement of the bankruptcy case by operation of § 552(a).[2]

---

[2] 11 U.S.C. § 552(a) provides in pertinent part: "Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security

3

Sun Valley contends that the transaction was an absolute sale of all future crops to Sun Valley, meaning that the future crop proceeds needed to fund the Plan never became part of the bankruptcy estate. In support of its contention, Sun Valley points to the language in the Assignment Agreement which reads, in pertinent part:

> Whereas, [Debtor] has granted [Sun Valley] a security interest in any and all crops now or hereafter located or growing or to be grown on the Property as security for repayment of all amounts due under the Promissory Draw Note executed by [Debtor] to [Sun Valley] . . . .
>
> . . . .
>
> [T]he parties hereby agree as follows:
>
> 1. [Debtor] hereby irrevocably assigns all of [his] right, title and interest in and to all proceeds of all crops produced on the Property to [Sun Valley] for a period beginning on the date hereof and *ending on the date upon which the balance of principal and interest due under the Promissory Draw Note shall equal zero.* . . .
>
> 2. [Debtor] agrees that [Sun Valley] shall apply all crop proceeds of [Debtor] received by [Sun Valley] in the following manner. All crop proceeds received by [Sun Valley] pursuant to this Agreement shall be applied in reduction of: <u>First</u> the amount due [Sun Valley] of accrued but unpaid interest under the Promissory Draw Note; <u>Second</u> the amount due [Sun Valley] as unpaid principal balance of the Promissory Draw Note; *and then to return to [Debtor] any proceeds received in excess of such amounts.*

Objection, Exhibit 2, p. 1, emphasis added.

Early in the course of the bankruptcy case, the Debtor needed funding for the 2011 crop and brought a motion for the use of Sun Valley's cash collateral, the 2010 crop and proceeds (the "Cash Collateral Motion"). The Debtor explained, in his declaration in support of that motion, that Sun Valley provided his crop financing and "acquired an interest in Debtor's raisin crop for 2009 and future crops. . . ." Sun Valley "entered into an agreement in 2008 for the

---

agreement entered into by the debtor before the commencement of the case."

4

exclusive right to pack my raisins. The agreement included a *security agreement in my raisin crop to insure performance and to secure any advances on the crop*." (Cash Collateral Motion, 11/24/10, Decl., Dkt. No. 75, 1:22-25, emphasis added.) The Debtor proposed that Sun Valley be granted a "replacement lien in Debtor's 2011 and all future crops in the amount of the cash collateral used . . . ." (*Id.*, 2:16-17.)

Sun Valley had the opportunity to comment on the proposed order and did not object to the Cash Collateral Motion. (*See* Dkt. No. 121, filed 2/24/2011.) The unopposed order was approved by the court and reads, in pertinent part:

> The secured claim of Sun Valley on the future crops of Debtor shall be fixed in the amount of the gross 2010 proceeds less the cost of harvest . . . .
>
> It is further ordered that Sun Valley shall be granted a replacement lien in Debtor's 2011 crop and subsequent crops to the extent of the cash collateral utilized.

Objection, Exhibit 7, 2:1-6.

The Debtor did not sell the 2010 crop and so did not use Sun Valley's cash collateral. Under the terms of the Plan, Sun Valley will receive delivery of the 2010 raisin crop and the balance of its claim will be treated as an unsecured claim.

In November of 2010, the Debtor brought a motion to value the collateral of Spartan Mortgage Services, holder of the mortgage on his real property. By virtue of the Deed of Trust, which is junior to that of Spartan Mortgage Services, Sun Valley was a respondent to the motion. The court granted the unopposed motion which valued at $0 any interest of Sun Valley in that real property.

**Issue Presented.**

The court must determine whether Sun Valley holds an ownership interest in the Debtor's post-petition raisin crops and the proceeds. If Sun Valley owns the Debtor's future crops then the Objection must be sustained and confirmation

5

of the Plan must be denied. If, however, Sun Valley's interest is other than an ownership interest, the Objection must be overruled and the Plan may be confirmed.

**Analysis and Conclusions of Law.**

      **Article 2, California Uniform Commercial Code.** There is no dispute that the California Uniform Commercial Code applies to the subject transaction. The Article 2 applies to sales of goods, and Article 9 applies to security interests and to sales which necessarily involve a security interest. The Uniform Commercial Code[3] does permit creditors to take a security interest in after-acquired property. *In re S & Z Intern. Management, Inc.,* 10 B.R. 580, (Bankr.Fla., 1981).[4] The commencement of a bankruptcy case, however, cuts off those interests as of the date of filing. § 552(a).

> The legislative history of the Bankruptcy Code demonstrates that the *purpose of § 552 is to prevent the attachment, under such a clause, of a creditor's pre-petition security interest to entirely new property acquired by the estate or by the debtor in bankruptcy.*

*Id.* 10 B.R. at 582 (citations omitted).

      It is the Debtor's position that § 552 operates to terminate Sun Valley's security interest in future crops and the proceeds of those crops. It is Sun Valley's position, however, that § 552(a) does not apply to its claim because the

---

[3] The property and parties are in California, and California law applies. It is proper to refer to decisions from other states construing the common text of the UCC. *In re Schwalb*, 347 B.R. 726, 738 (Bankr.D.Nev.,2006).

[4] A security interest in future crops must be distinguished from the security interest in the *proceeds* of crops in existence at the time.

> "Proceeds" under the UCC are a particular type of collateral, and are not to be confused with after-acquired property. The distinction is preserved by § 552(b), which excepts proceeds from the effect of § 552(a). Subsection (b) is consistent with the overall treatment of security interests under the Bankruptcy Code. It essentially retains the priorities in proceeds as set forth in the UCC, even for proceeds which were received after commencement of the case. *Id.*

transaction did not create a security interest, but constituted a sale of the 2010 crop and *of all future crops* grown by the Debtor on his property, until its claim is satisfied. Sun Valley places great weight on the specific terms used in the Loan Documents. However, the use of the words "transfer" and "assignment" do not define the agreement as a transfer of ownership. The Cal. Com. Code does not define these terms as relating solely to either, the sale of an interest in goods, or the creation of a security interest in collateral. Cal. Com. Code § 9102, Comment 26, explains:

> In numerous provisions, this Article refers to the "assignment" or the "transfer" of property interests. These terms and their derivatives are not defined. This Article generally follows common usage by using the terms "assignment" and "assign" to refer to transfers of rights to payment, claims, and liens *and other security interests*. It generally uses the term "transfer" to refer to other transfers of interests in property. Except when used in connection with a letter-of-credit transaction (*see* Section 9-107, Comment 4), no significance should be placed on the use of one term or the other. *Depending on the context, each term may refer to the assignment or transfer of an outright ownership interest or to the assignment or transfer of a limited interest, such as a security interest.*

(Emphasis added.)

The Assignment Agreement uses terms that are consistent with an absolute sale of the crops. It also uses terms consistent with the creation of a security interest in those crops. Nevertheless, the Loan Documents could not transfer the ownership of the Debtor's future crops. Pursuant to the Cal. Com. Code, the Loan Documents could only create either, a contract for the sale of the future crops, or, a security interest in the future crops. Cal. Com. Code § 2105(1) defines growing crops as "goods." A contract for the sale of growing crops which does not include the land itself is a contract for the sale of goods and

7

subject to Article 2. Cal. Com. Code § 2107(2).[5] However, a purported sale of future crops is, instead, a *contract for* the sale of goods, and not a *present sale* of goods.

> Goods must be both existing and identified before any interest in them can pass. Goods which are not *both existing and identified* are "future" goods. A purported present sale of future goods or of any interest therein operates as a *contract to sell.*

*Id.* (2), (emphasis added).

If the Loan Documents are construed to constitute a contract for the sale of future goods, then Sun Valley may have a breach of contract claim against the Debtor based on his rejection of that contract. However, Sun Valley has not asserted a breach of contract claim. When the Loan Documents are considered as a whole, as they must be, the court is persuaded that the Loan Documents created a security interest in the Debtor's 2011 crop and his future crops and proceeds.[6]

The case, *In re Berry*, 189 B.R. 82 (Bankr.D.S.C.,1995), illustrates both the interpretation of the term "assignment" and the necessity that goods be both identified and existing at the time of the agreement. In *Berry*, a chapter 13 debtor assigned his rights in future renewal commissions to a bank as security for a note. The trustee moved to avoid the assignment of the commissions on the grounds

---

[5] These contract documents may be recorded in the same manner as a deed of trust in order to put others on notice of the buyer's rights under the contract for sale, *id.*, (3), which was done in this case.

[6] Neither party submitted post-execution evidence of intent. Therefore, the court reviews only the Loan Documents to determine the parties' intent. The Loan Documents constitute an integrated written contract. While the UCC rejects the *presumption* that a written contract sets forth the parties' entire agreement, it does not allow the use of evidence of prior or contemporaneous oral agreements to vary or contradict the terms of an *integrated written contract*. Cal. Com. Code § 2202. The Security Agreement contains, at section 9, an integration clause. The Security Agreement was executed contemporaneously with the Discretionary Draw Promissory Note and the Agreement Regarding Assignment of Crops and Crop Proceeds. The Deed of Trust with Assignment of Rents as Additional Security was drafted that same day as well.

8

that the bank's security interest was unperfected.[7] The bank argued unsuccessfully that it was not required to file a UCC Financing Statement because the debtor's future commissions had been absolutely transferred to the bank. The words used in that agreement were not dissimilar to those used in the Loan Documents between Sun Valley and the Debtor. The debtor in *Berry* did "hereby sell, assign, transfer, set over and deliver to [the bank] all of the right, title and interest of the undersigned in and to any of the renewal commissions . . . ." *Id.* at 85.

The *Berry* court listed the factors that should be considered in the determination of whether an assignment is an absolute transfer of ownership or grant of security:

> 1. A security interest is indicated where the assignee retains a right to a deficiency on the debt.
>
> 2. A security interest is also indicated when the assignee acknowledges that his rights in the assigned property would be extinguished if the debt owed were to be paid through some other source.
>
> 3. ... A security interest is indicated if the assignee must account to the assignor for any surplus received from the assignment over the amount of the debts.
>
> 4. Evidence that the assignor's debt is not reduced on account of the assignment is also evidence that the assignment is intended as security.
>
> 5. Finally, the contract language itself may express the intent that the assignment is for security only. In contrast, assignments have been found to be absolute transfers where the assignment operates to discharge the underlying debt.

*In re Berry*, 189 B.R. at 87 (citations omitted).

Applying the *Berry* factors to the case at hand, the Loan Documents

---

[7]The court concluded that the reason the bank did not file a UCC Financing Statement was because it had relied on the mistaken assumption that the debtor's commissions were wages and so that perfection was not required. However, the Debtor was an independent contractor and not an employee of the agency which distributed the commissions.

9

clearly show that the Debtor's obligation under the Assignment Agreement, to grow and deliver crops and turn over crop proceeds to Sun Valley, was to continue as long as, and *only as long as*, the Debtor's debt to Sun Valley remained unpaid. In addition, the Assignment Agreement provided that any amount Sun Valley received in excess of the debt must be returned to the Debtor. Finally, there is no indication that the Assignment Agreement in any way reduced the Debtor's obligation to Sun Valley, as would have been the case if this had been an actual transfer of ownership. The court is therefore persuaded that Sun Valley had a security interest, in the Debtor's 2010 crop and in his future crops, that was terminated by the operation of § 552 as of the date the case was filed.

**Judicial Estoppel.**

The court has the discretion to invoke the doctrine of judicial estoppel, "an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 82 (9th Cir.2001). In determining whether a party is subject to judicial estoppel, the court considers: "(1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1148 (9th Cir.2011) (citations omitted).

It appears from the record that Sun Valley's argument, that the Loan Documents created a sale of the Debtor's post-petition crops, did not arise until late in the case. Sun Valley's proof of claim was filed for "money loaned,"

10

secured by real estate, in the amount of $210,000.[8] The proof of claim is not consistent with Sun Valley's current contention that it owns the post-petition crops. Sun Valley cannot have both, a claim for $210,000, *and* ownership of the crops for which it now claims the $210,000 was paid.

When the court initially approved the Debtor's Cash Collateral Motion, that order also recognized and protected Sun Valley's security interest in the 2010 crop. In addition, by virtue of Sun Valley's recorded Deed of Trust, it was a party with a right to object to the Debtor's motion to value the real property. Sun Valley's current contention, that it actually owns the 2010 crop and the Debtor's future crops, is inconsistent with Sun Valley's original position as represented in its proof of claim, its silent acquiescence to the Motion for Cash Collateral, and its asserted security interest in the Debtor's real property that was created by the Deed of Trust.

Finally, Sun Valley allowed the Debtor to incur the cost of drafting the Plan which provides for Sun Valley's claim *exactly as it was filed by Sun Valley.* Sun Valley's subsequent objection to the Plan, on grounds inconsistent with its proof of claim, imposes "an unfair detriment" on the Debtor in his attempt to reorganize his family farming operation. As the court said, in *Rockwell Intern. Corp. v. Hanford Atomic Metal Trades Council,* 851 F.2d 1208 (9th Cir.1988),

> Unlike collateral estoppel, res judicata, and equitable estoppel, judicial estoppel focuses exclusively on preventing the use of inconsistent assertions that would result in an "affront to judicial dignity" and "a means of obtaining unfair advantage." The doctrine is intended to protect against a litigant playing "fast and loose with the courts" by asserting inconsistent positions.

*Id.* at 1210, emphasis added.

---

[8] Sun Valley recorded its interest in the Debtor's crops. Cal. Com. Code § 2107(3) provides: "[T]he contract for sale may be executed and recorded in the same manner as a document transferring an interest in land and shall then constitute notice to third parties of the buyer's rights under the contract for sale."

11

Sun Valley is judicially estopped from asserting a position that it now owns the Debtor's crops. The court relied on, and was persuaded by, Sun Valley's evidence of a security interest in the crops and based thereon awarded Sun Valley a replacement lien against the Debtor's future crops. In addition, the Debtor is unfairly prejudiced by the change in Sun Valley's position.

**Conclusion.**

Based on the foregoing, the court finds and concludes that Sun Valley does not own the Debtor's future crops. Sun Valley had a security interest in the future crops that terminated as of the date the petition was filed. Any transfer of ownership was limited by law to the crops already in existence at the time the petition was filed. The Plan provides for the delivery to Sun Valley of that crop. In addition, Sun Valley is barred by judicial estoppel from asserting a position inconsistent with its prior position which was relied upon by the court and under which it received a benefit. Therefore, the Objection will be overruled and the Plan will be confirmed. The Debtor shall submit an appropriate confirmation order.

Dated: December 16, 2011

W. Richard Lee
United States Bankruptcy Judge

Richard Forrest, Case No. 10-19194-B-12/DC No. HAR-3

Richard Forrest
8598 S. Bethel Avenue
Selma, CA 93662

Hilton A. Ryder, Esq.
Attorney at Law
5 River Park Place East
P.O. Box 28912
Fresno, CA 93729-8912

David R. Jenkins, Esq.
Attorney at Law
2444 Main Street, Suite 120
P.O. Bo 1406
Fresno, CA 93716

Robert Craig Iseley, Esq.
Attorney at Law
9616 Micron Avenue, Suite 700
Sacramento, CA 95827

René Lastreto, Esq.
Attorney at Law
P.O. Box 40012
Fresno, CA 93755-0012

Craig B. Fry, Esq.
Attorney at Law
P.O. Box 40012
Fresno, CA 93755-0012

Thomas E. Campagne, Esq.
Attorney at Law
1685 N. Helm Ave.
Fresno, CA 93727

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare St., Ste. 1401
Fresno, CA 93721

M. Nelson Enmark, Esq.
Chapter 12 Trustee
3855 N. West Ave., Ste. 108
Fresno, CA 93705